# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:15-CR-00286 DAD-BAM |
| Plaintiffs, | **ORDER ON DEFENDANTS' MOTIONS FOR DISCOVERY** |
| v. | Doc. 286, 287 |
| HAITHAM EID HABASH, et al, | |
| Defendants. | |

Two motions for discovery are pending before this Court. On November 17, 2017, Defendant Habash ("Habash") filed his motion for discovery. (Doc. 286.) On December 18 and 19, 2017, the Government filed an opposition and a supplement to the opposition. (Doc. 293, 294.) On January 11, 2018, Defendant Habash filed a reply. (Doc. 297.) Also pending is a motion for discovery by Defendant Akroush ("Akroush"), which was filed also on November 17, 2017. (Doc. 287.) The Government opposed the motion on December 18, 2017. (Doc. 291, 292 (amended).) Defendant Akroush filed a reply on January 12, 2018. (Doc. 298.) Each Defendant joins in the other Defendant's motion. The motions came on for hearing on January 24, 2018. Defendant Habash appeared by counsel by telephone Shaun Khojayan. Defendant Akroush appeared personally and in person by counsel Marc Days. The Government appeared in person by AUSA Karen Escobar. Having considered the moving, opposition and reply papers and the

parties' arguments, and the entire file, the Court rules as follows.[1]

## I. FACTUAL BACKGROUND

On October 8, 2015, the Government indicted the Defendants on multiple charges. (Doc. 1.) The discovery motions primarily relate to Count 1 of the Indictment which charges the Defendants with conspiracy to manufacture, to distribute and to possess with intent to distribute a controlled substance and aiding and abetting, in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(C) and §846 and 18 U.S.C. §2. As relevant to Count 1, the Indictment states:

> defendants in about February 8, 2012, and continuing to about Oct 8, 2015, in the counties of Kern and Los Angeles, within the state and Eastern and Central Districts ***and elsewhere,*** did knowing and intentionally conspire and agree . . . with others . . . to manufacture, to distribute, and/or to possess with intent to distribute a mixture and substance containing a detectable amount of one or more of the following: AB-CHMINACA, AB-PINACA, and XLR11 . . .

Doc. 1, p.3 [emphasis added].

The Government has produced voluminous discovery of approximately 75,000 pages involving drug seizures around the country. These seizures were sent to various DEA laboratories for testing. The Government identified that the DEA case numbers identified by Akroush in his motion relate to the investigations conducted by the following DEA offices. (Opposition Doc. 292, p. 11 of 16.)

| **DEA Case Number** | **DEA Office** |
|---|---|
| BF-14-0012 | Chicago Field Division |
| BH-13-0018 | Hagerstown, Maryland Resident Office |
| IJ-12-0093 | Minneapolis District Office |
| M3-14-0073 | Houston Field Division |
| R1-13-0399 | Los Angeles Field Division |
| RZ-14-0027 | Bakersfield Resident Office |

From each of these investigations, the Government produced, among other things, drug Chemical Analysis reports, Laboratory reports, DEA Form 6 and DEA Form 7.[2] The Government redacted

---

[1] At the hearing on these motions, the Court heard extensive oral argument for two hours on the motions, and made rulings and findings and justifications on the record. This order supplements the on-the-record discussion.

[2] DEA Form 6 is a report which documents the investigation activities leading to the arrest and seizure of evidence. DEA Form 7 is a report which identifies the product name of the drug seized, when the DEA took custody, who took DEA custody and the case number associated with the drug exhibit.

the DEA case number, among other redactions, from most of the reports produced to Defendants.

### A. Habash's Motion for Discovery

Habash's motion sought various items of discovery, but through meet and confer efforts, the dispute was narrowed to two issues. The first issue is a request for production of **un**redacted (a) Chemical Analysis reports, (b) Laboratory reports, (c) DEA Form 6 and (d) DEA Form 7. In particular, Habash seeks to unredact the "case number" or "file number" from each document. The second issue is the Defendants' request for the Government "to specifically identify which seizures are alleged to be part of Count 1 of the Indictment."

### B. Akroush's Motion for Discovery

Akroush's motion also seeks discovery of the same two issues which remain for Habash, as described above. In addition to these two issues, Akroush seeks production of numerous other documents. Akroush's specific and additional discovery items will be set out below.

## II.  DISCOVERY

Rule 16 of the Federal Rules of Criminal Procedure grants defendants a right to discovery, providing that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph ... documents ... within the government's possession, custody, or control ... [that are] material to preparing the defense...." Fed.R.Crim.P. 16(a)(1)(E)(i). Information is "in the possession of the government" if the prosecutor "has knowledge of and access to the documents sought by the defendant." *United States v. Bryan*, 868 F.2d 1032 (9th Cir.), *cert. denied*, 493 U.S. 858, 110 S.Ct. 167 (1989).

Rule 16 requires a party seeking discovery to make a showing of materiality of the information sought. To receive discovery, the defendant "must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *U.S. v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010) (quoting *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir.1995)); *see also United States v. Doe,* 705 F.3d 1134, 1150 (9th Cir. 2013) (The defendant must make a preliminary showing of materiality, "which requires a presentation of facts which would tend to show that the government is in possession of information helpful to the defense.").

A court must determine whether the requested documents are "material to preparing the defense." In the context of Rule 16, "'the defendant's defense' means the defendant's response to the Government's case in chief." *U.S. v. Armstrong*, 517 U.S. 456, 462, 116 S.Ct. 1480 (1996). The United States Supreme Court has interpreted "material to preparing the defense" to solely involve "defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). While it might be argued that as a general matter, the concept of a "defense" includes any claim that is a "sword," challenging the prosecution's conduct of the case, the term may encompass only the narrower class of "shield" claims, which refute the Government's arguments that the defendant committed the crime charged. Rule 16(a)(1)(C) tends to support the "shield-only" reading. *United States v. Armstrong*, 517 U.S. at 462-63 ("[w]e hold that Rule 16(a)(1)(C) authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims.").

### A. Issue 1: Production of *Un*redacted Documents

Both Defendants seek the production of unredacted versions of already produced documents. According to the Defendants, not everything that has been redacted needs to be unredacted. Defendants ask that just the DEA case numbers be unredacted, as it will allow Defendants to cross-refer the (a) Chemical Analysis reports, (b) Laboratory reports, (c) DEA Form 6 and (d) DEA Form 7, among all the related investigations. Defendant cannot now cross refer the reports without the DEA case number. Each investigation identifies a "drug exhibit" numerically and as there are multiple investigations, each investigation has a "drug exhibit 1," a "drug exhibit 2," a "drug exhibit 3," and so on. As argued and explained more fully on the record, Defendants need to cross refer investigations to the results without speculation and without uncertainty if they accurately match up reports. The reports and forms cannot be definitively, or with certainty, matched to the drug exhibits without the investigation case number.

The Government opposes unredacting the DEA case numbers, stating that the case numbers are confidential as "internal government documents" – knowledge of the case number can lead to NADDIS system and ongoing investigations. The Government argues that Defendants can match lab reports to the location where each drug was analyzed. For instance, South Central

lab in Dallas means a Texas investigation; Vista California Southwest Lab mean Los Angeles Seizures; Western Regional lab means Bakersfield seizures; and DEA Mid Atlantic means Hagerstown, Maryland seizures.

**Ruling:** The reports, (a) Chemical Analysis reports, (b) Laboratory reports, (c) DEA Form 6 and (d) DEA Form 7, must be re-produced with the case number (and as is sometime referred to the "file number") **un**redacted. As ruled more fully on the record, the Defendants cannot definitively cross-refer the drug exhibits to the various reports without the case number, and they should not be required to speculate as to the various reports and analyses which will be used against them. While there may be some confidentiality of case numbers, the case number is not an "internal government document" within the meaning of Rule 16(2)("this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney"). The documents have been disclosed and what was previously redacted was merely small portion of the unprotected document.

Moreover, there are protective orders in place. In the Habash protective order (Doc. 48), Habash agreed that defense counsel would share documents only with counsel, defense investigators and staff, and defendant Habash cannot have a copy of confidential documents and may only review in counsel's presence. The protective order is restrictive and alleviates the concerns raised by the Government. Defendant Akroush entered into a similar protective order with similar restrictive terms. (Doc. 46.) Accordingly, any confidentiality is preserved through the restrictive protective order.

The Government shall produce the following documents unredacted for case number (or "file number" where appropriate): (a) Chemical Analysis reports, (b) Laboratory reports, (c) DEA Form 6 and (d) DEA Form 7, which are the subject of Count 1.

At oral argument, the Government raised the issue of burden of reproduction, given the shortage of clerical/administrative assistance in the U.S. Attorney's office. Based on these representations, the Government shall be giving time and shall produce the documents not later than March 23, 2018.

B. **Issue 2: Identify seizures the subject of Count 1 of the Indictment**

The Defendants request that the Government "to specifically identify which seizures are alleged to be part of Count 1 of the Indictment."

The Indictment spans a three-year time frame, and includes drug seizures from around the country of which, apparently, only some are at issue, and some are not – in at least 5 different DEA cases. The Indictment states: defendants in about February 8, 2012, and continuing to about Oct 8, 2015, in the counties of Kern and Los Angeles, within the state and Eastern and Central Districts *and elsewhere,* did knowing and intentionally conspire" and agree with others known and unknown to manufacture, distribute, possess with intent to distribute a controlled substance. (Doc. 1 (emphasis added).)

The Government represented at the hearing that it produced only the Chemical Analysis reports, Laboratory reports, DEA Form 6 and DEA Form 7, and other documents from the seizures around the country which are the subject of Count 1 of the Indictment. In other words, as the Government stated, if these reports were produced, then those are the drugs Defendants are charged with in Count 1. For instance, the Government states: "Akroush presumes that all drug exhibits in all of the separate drug investigations identified by him are relevant to his case. They are not." (Opposition Doc. 292 p. 10 of 16.) The Government acknowledges large quantities of drugs were seized, yet not every drug seizure is the subject of Count 1. "The target of the Maryland case was not Akroush or any of his co-defendants. **While Akroush may have supplied some drugs to the target,** they didn't provide all. **Thus, only the reports of tested drugs relevant to this case were produced in discovery."** (Doc. 292 p. 11 of 16 [emphasis added]). The Government offered: "Should the defendant request to inspect drug evidence seized in other cases resulting from investigations not conducted in concert with the agents in this case, drug evidence will be available at a mutual date." (Doc. 292 p. 5of 16, p. 7-7

**Ruling:** DENIED.

At oral argument, the Government repeatedly asserted "that only drug exhibits which are the subject of Count 1 were produced in discovery." Until their motions for discovery, the Defendants did not know **which** DEA investigations were at issue. The Government identified

those DEA investigations at issue in Count 1:

| DEA Case Number | DEA Office |
|---|---|
| BF-14-0012 | Chicago Field Division |
| BH-13-0018 | Hagerstown, Maryland Resident Office |
| IJ-12-0093 | Minneapolis District Office |
| M3-14-0073 | Houston Field Division |
| R1-13-0399 | Los Angeles Field Division |
| RZ-14-0027 | Bakersfield Resident Office |

Until their motions for discovery, the Defendants did not know **which drug seizures** were at issue. Now, the Government has identified that "only the reports of tested drugs relevant to this case were produced in discovery." (Opposition Doc. 292 p.11 of 16.) The Government clarified at oral argument that it produced only the drug evidence for seizures that are in Count 1. For instance, the Government stated that Defendants' "activities intersected with other investigations of other targets in other jurisdictions such as DEA Hagerstown, Maryland but seizures by DEA Hagerstown, Maryland which are not part of Count 1 were not produced." (Opposition Doc. 292 p. 10 of 16) ("Akroush presumes that all drug exhibits in all of the separate drug investigations identified by him are relevant to his case. They are not.") And now, with the Court's order to unredact case number information, the Defendants can match precisely the Chemical Analysis reports, the Laboratory reports, the DEA Form 6 and the DEA Form 7 to the specific DEA investigation and drug exhibits.

    At the hearing, Defendants requested that this Court order the Government to prepare a bill of particulars. According to the Ninth Circuit, a bill of particulars "is appropriate where a defendant requires clarification in order to prepare a defense." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). In particular, its purposes are (1) "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial," (2) "to avoid or minimize the danger of surprise at the time of trial," and (3) "to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (quoting *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979)). "A bill of particulars should be limited to these purposes: a defendant is not entitled to know all the evidence the government intends to produce but only the theory of the government's case." *United States v.*

*Singh*, No. 2:13-cr-00648-CAS-9, 2017 WL 3701448, at *11 (C.D. Cal. Aug. 17, 2017) (citations and quotations omitted); *see also United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) ("A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case."); *Geise*, 597 F.2d at 1181 ( "A defendant is not entitled to know all the [e]vidence the government intends to produce."). Indeed, the purposes of a bill of particulars are served "if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984).

"In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054. "Full discovery will obviate the need for a bill of particulars." *Id.*; *see also United States v. Chan*, 1:07-cr-00239 LJO, 2008 WL 5233585, at *1 (E.D. Cal. Dec. 12, 2008) ("A bill of particulars is not intended to be used for discovery purposes."). Further, a request for the "when, where, and how of every act in furtherance of [a] conspiracy" is the equivalent of "a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." *Giese*, 597 F.2d at 1181.

The Court denies the request for a bill of particulars. Unredacted case numbers on Chemical Analysis and Laboratory reports, and DEA Form 7 and DEA Form 6 will identify when and where evidence was seized. Defendants will be able to cross-reference the case numbers with particular seizures identified and disclosed by the Government. The Government has repeatedly represented that it only produced drug seizure information for drug seizures within Count 1.

**C. Remaining Items from Akroush's Motion**

In addition, to the above discovery, Akroush seeks discovery of other items.

**a. Unredacted items (items ii, iii, iv)**

Akroush asks for "ii. Unredacted chemical analysis and laboratory reports," "iii. Unredacted case numbers on DEA Form 7 reports," and "iv. Unredacted case numbers on DEA Form 6 reports." (Motion Doc. 287 p 4 of 11; Reply Doc. 298 p 7 of 14.) The Court has ruled, as discussed above, that these items must be produced unredacted with the case or file number. Therefore, Akroush's motion as to these items is GRANTED.

### b. All Chemical and Laboratory reports and Forms 6 and 7 for all related investigations in Count 1

At oral argument on these motions, the Government clarified that it produced in discovery all Chemical Analysis, Laboratory reports and DEA Forms 6 and 7 which are the subject of Count 1. In other words, as the Government stated, if these reports were produced, then those are the drugs Defendants are charged with in Count 1. Thus, other laboratory reports and other chemical analysis reports in other related investigations, are not part of Count 1 and were not produced.

Nonetheless, Akroush requests the production of all reports generated in this and all related investigations. Akroush seeks all of the chemical analysis/laboratory reports and all of the Form 6 and 7s in each of the related investigations, even if not the subject of Count 1.[3] Akroush argues that all of the drug evidence, regardless of whether Defendant is charged with the particular drug seizure in Count 1, is material to his defense because the product came from the same manufacture or distributor, and some of the named products tested positive and tested negative for a controlled substance.[4] Defendant argues "Chemical analysis reports show that similar products seized in other investigations tested negative for a controlled substance or that a product's ingredients continually changed." (Reply Doc. 298 p. 4 of 14.)

**Ruling:** The Court DENIES this request in part and GRANTS this request in part. The Court DENIES the request for documents (Chemical Analysis, Laboratory reports and Forms 6 and 7 ) in "all related investigations." These "all related investigations" drug seizures are not within Count 1 and therefore fail to satisfy the *Armstrong* threshold. Further, it is speculative and overly broad that every seizure should be the subject of disclosure because it **may** have been provided by the same manufacturer or **may** have tested negative, where defendant presents

---

[3] Akroush seeks the following:
v. All chemical analysis and laboratory reports for drug exhibits in case numbers BF-14-0012, BH-13-0018, IJ-12-0093, M3-14-0073, R1-13-0399, RZ-14-0027, and any other case or investigation that is the subject of count one of the indictment.
vi. All DEA Form 7 reports for drug exhibits in case numbers BF-14-0012, BH-13-0018, IJ-12-0093, M3-14-0073, R1-13-0399, RZ-14-0027, and any other case or investigation that is the subject of count one of the indictment.
vii. All DEA Form 6 reports for drug exhibits in case numbers BF-14-0012, BH-13-0018, IJ-12-0093, M3-14-0073, R1-13-0399, RZ-14-0027, and any other case or investigation that is the subject of count one of the indictment.

[4] Defendant states: "some of the named products that were seized as part of the Bakersfield investigation (DEA case number RZ-14-0027) tested both positive and negative for a controlled substance. For example, some packages of Bizarro Cherry, identified as exhibit 6 (DEA case number RZ-14-0027), seized on March 15, 2015, tested positive for a controlled substance and some packages tested negative for a controlled substance." (Reply Doc. 298 p. 4 of 14.)

argument that **only 1** identified product tested negative. Defendant must introduce "specific facts, beyond allegations" demonstrating the materiality of the requested documents, discovery of these additional documents will not be compelled. *United States v. Santiago*, 46 F.3d 885, 894–95 (9th Cir.1995); see also *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990) ("Neither a general description of the information sought nor conclusory allegations of materiality suffice.").

Nonetheless, the Court will GRANT the request in part. The Government shall produce all documents related to drug seizures, if not already produced, which it contends comes from or is attributable to Akroush that tested negative. The Government shall produce all documents related to drug seizures, if not already produced, which it contends comes from or is attributable to Habash that tested negative. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (the government has an obligation to learn of and disclose exculpatory or impeachment evidence favorable to the defendant within the prosecution's possession).

The Court GRANTS the request in part as to **DEA Case Number RZ-14-0027.** DEA Case Number RZ-14-0027 is out of the Bakersfield Resident Office. At oral argument, the Government represented that seizures in this DEA case number are attributable to both defendants (unlike other DEA case numbers which had multiple other targets). Thus, it would make sense that all drug exhibits and information should have been produced. Yet, Akroush represents that "Chemical analysis/laboratory reports have not been produced for the following drug exhibits: 25-39 and 43-75." (Reply Doc. 298 p. 6 of 14.) Akroush represents that DEA Form 7 reports have not been produced for the following drug exhibits: 1-3 and 71. DEA Form 6 reports have not been produced for the following drug exhibits: 50-75. (I*d.*)

The Government acknowledges that not every drug exhibit was tested, due to limited in funds, which is understandable, but it is not understandable why each drug exhibit does not include a DEA Form 6 (report of investigation) and a DEA FORM 7 (custody). Thus, the Government shall produce all Chemical Analysis, Laboratory Reports, Form 6 and Form 7 for **DEA Case Number RZ-14-0027**, if not already produced.

### c. Requests 1-6 related to Dothan, Ala. Seizure of spice and cannabinoids

Drug seizures in Dothan, Alabama are at issue because the Government states in its opposition to Akroush's motion that "DEA case agent who [] custody of the Dothan Drug

10

evidence and the DEA chemist [] analyzed these drug exhibits." (Doc. 292, p.3 of 16 lines 1-20.) Dothan is at issue in Count 1.

The Government states that it produced all discovery within its possession, custody and control as Dothan was not originally investigated by DEA.

**Ruling:** The Court GRANTS the motion as to items 1-6 to the extent they are in the possession, custody, and control of the Government, not already produced, and the subject of Count 1 of the Indictment.

### d. Items 7 and 8 – Invoices, receipts, labels, etc. subject of Count 1[5]

Defendant Akroush argues these items are material to his defense. Each invoice, receipt, or shipping/mailing label for spice seized and the subject of count one of the Indictment, which charges conspiracy, will enable the defense to identify the source of the product seized and whether the product seized was from Defendant. The record of the chain of custody of each invoice, receipt, or shipping/mailing label for spice will enable the defense to identify witnesses to call to testify, specifically invoices, receipts, or shipping/mailing labels for spice, to establish that spice from Akroush did not contain a Schedule I controlled substance. (Reply Doc. 298 p.11 of 14.)

The Government argues that all documents and objects, including chain of custody documents have been produced. (Opposition Doc. 292 p.4 of 16.) At oral argument, the Government stated that all documents related to evidence the Government intends to use at trial have been produced. The Government has not inventoried the drug evidence.

**Ruling:** The Court GRANTS the motion as to items 7 and 8 to the extent they are in the possession, custody, and control of the Government, not already produced, and the subject of Count 1 of the Indictment.

### e. Items 14-16 – Drug Exhibit from Bakersfield, L.A. and other locations[6]

---

[5] Request no. 7: Each invoice, receipt, or shipping/mailing label for spice (whether or not the product contains or contained a substance that has been, at any time, a federal controlled substance) seized and the subject of count one of the indictment in the above entitled action.
Request no. 8: The record of the chain of custody of each invoice, receipt, or shipping/mailing label for spice (whether or not the product contains or contained a substance that has been, at any time, a federal controlled substance) seized and the subject of count one of the indictment in the above entitled action.

The Government states that all documents and objects, including chain of custody documents have been produced. (Opposition Doc. 292 p.4 of 16.) But the Government has asked the DEA case agent for LA and Bakersfield to review their files for photographs or videos and to make similar requests to any chemists who tested the drug evidence. The Government states that: "Should the defense request to inspect drug evidence seized in other cases resulting from investigations not conducted in concert with the agents in this case, any existing drug evidence will be available for inspection upon request at a mutually convenient date, time, and place." (Opposition Doc. 292 p. 5 of 16.)

**Ruling:** The Court GRANTS the motion as to items 14-16 to the extent they are in the possession, custody, and control of the Government, not already produced, and the subject of Count 1 of the Indictment. The Court DENIES the request for all related investigations not the subject of Count 1.

### f. Items 17-19 – Notice of drug destruction, response and photos[7]

---

[6] Request no. 14: For each drug exhibit seized and submitted by the DEA Bakersfield Resident Office (as described in AUSA Karen Escobar's August 12, 2016, email to defense counsel): (a) photographs or video of the drug evidence; (b) lab reports of the drug evidence; and (c) the record of the chain of custody. [Rule 16(a)(1)(E)(i)].
Request no. 15: For the DEA Los Angeles drug evidence (as described in AUSA Karen Escobar's August 12, 2016, email to defense counsel): (a) photographs or video of the drug evidence; (b) lab reports of the drug evidence; and (c) the record of the chain of custody of the drug evidence. [Rule 16(a)(1)(E)(i)].
Request no. 16: For each spice product (whether or not the product contains or contained a substance that has been, at any time, a federal controlled substance) seized and the subject of count one of the indictment in the above entitled action: a) photographs or video of the spice; (b) lab reports of the spice; and (c) the record of the chain of custody for the spice. [Rule 16(a)(1)(E)(i)].

[7] Request no,17: For drug evidence obtained by the DEA Bakersfield Resident Office (as described in AUSA Karen Escobar's August 12, 2016, email to defense counsel in the entitled action) that has been destroyed: (a) the notice provided to the appropriate U.S. Attorney, Assistant U.S. Attorney, or the responsible state/local prosecutor that the amount of seized drug evidence exceeding the threshold amount will be destroyed [28 C.F.R. §50.21(e)(1)]; (b) the response from the prosecutor to the notice that drug evidence would be destroyed [28 C.F.R. §50.21(f)(1)]; (c) test results of samples of the drug evidence to determine the chemical nature of the substance [28 C.F.R. §50.21(e)(2)]; and (d) photographs or videos that depict the drugs as originally packaged or an appropriate display of the drugs so as to create evidence exhibits for use at trial [28 C.F.R. §50.21(e)(2)]. See also Rule 16(a)(1)(E)(i).
Request no. 18: For the DEA Los Angeles drug evidence (as described in AUSA Karen Escobar's August 12, 2016, email to defense counsel in the above entitled action) that has been destroyed: (a) the notice provided to the appropriate U.S. Attorney, Assistant U.S. Attorney, or the responsible state/local prosecutor that the amount of seized drug evidence exceeding the threshold amount will be destroyed [28 C.F.R. §50.21(e)(1)]; (b) the response from the prosecutor to the notice that drug evidence would be destroyed [28 C.F.R. §50.21(f)(1)]; (c) test results of samples of the drug evidence to determine the chemical nature of the substance [28 C.F.R. §50.21(e)(2)]; and (d) photographs or videos that depict the drugs as originally packaged or an appropriate display of the drugs so as to create evidence exhibits for use at trial [28 C.F.R. §50.21(e)(2)]. See also Rule 16(a)(1)(E)(i).
Request no. 19: For each spice product (whether or not the product contains or contained a substance that has been, at any time, a federal controlled substance) seized, the subject of count one of the indictment in the above entitled action, and that has been destroyed: (a) the notice provided to the appropriate U.S. Attorney, Assistant U.S. Attorney, or the responsible state/local prosecutor that the amount of seized drug evidence exceeding the threshold amount will be destroyed [28 C.F.R. §50.21(e)(1)]; (b) the response from the prosecutor to the notice that drug evidence would be

Defendant requests the notice, the response and tests results of samples of the drugs that have been destroyed. Akroush argues the items requested are material to preparing the defense because they will help the defense identify what drug evidence has been destroyed and whether the Attorney General's policies for the destruction of drug evidence have been followed. (Reply Doc. 298 p. 13 of 14.) Akroush further argues that test results of samples of drug evidence destroyed may be exculpatory in that it may show drug evidence that did and did not contain a controlled substance. Defendant argues that it needs the notice and the response by the prosecutor so that Akroush can bring a motion to dismiss for violation of due process. (Reply Doc. 298 p. 13 of 14.)

The Government contends all the drug evidence seized by DEA Bakersfield has been preserved and was the subject of an extensive multi-day inspection by defense counsel. It also contends that documents and objects, including photographs or video, that meet the requirements of Rule 16(a)(1)(E) have been provided. Reports of examinations and tests, and records pertaining to them, such as chain of custody documentation, that meet the requirements of Rule 16(a)(1)(F) have been provided. (Opposition Doc. 292 p. 5 and 6 of 16.)

**Ruling:** The Court GRANTS the request for test results and photographs/videos of samples of drug evidence destroyed, to the extent they are in the possession, custody, and control of the Government, not already produced, and the subject of Count 1 of the Indictment.

The Court DENIES the request for the "notice" and the prosecutor's response in each of 17-19. Rule 16 does not authorize the discovery of any information whatsoever, as long as it is not privileged; rather, it authorizes discovery of certain specifically enumerated information. Discovery must be produced if it is "material to preparing the defense." Rule 16(A)(1)(E)(i). However, to be "material to preparing the defense," the discovery must be relevant to "defendant's response to the Government's case in chief." *Armstrong*, 517 U.S. at 462; see e.g., *United States v. Feathers*, No. 14-CR-00531-LHK, 2016 WL 7337518, at *12 (N.D. Cal. Dec. 19, 2016). In *Armstrong*, the United States Supreme Court established that Rule 16 does not automatically allow

---

destroyed [28 C.F.R. §50.21(f)(1)]; (c) test results of samples of the drug evidence to determine the chemical nature of the substance [28 C.F.R. §50.21(e)(2)]; and (d) photographs or videos that depict the drugs as originally packaged or an appropriate display of the drugs so as to create evidence exhibits for use at trial [28 C.F.R. §50.21(e)(2)]. See also Rule 16(a)(1)(E)(i).

discovery on affirmative defenses. Here, Akroush seeks the "notice" of destruction and the prosecutor's response because "the information will assist the defense in determining whether to file a motion to dismiss based on a due process violation." (Reply, Doc. 298 p. 13 of 14.) The notice and prosecutor's response are not documents relevant to Akroush's response to the Government's case in chief:

> While it might be argued that as a general matter, the concept of a "defense" includes any claim that is a "sword," challenging the prosecution's conduct of the case, the term may encompass only the narrower class of "shield" claims, which refute the Government's arguments that the defendant committed the crime charged. Rule 16(a)(1)(C) tends to support the "shield-only" reading. If "defense" means an argument in response to the prosecution's case in chief, there is a perceptible symmetry between documents "material to the preparation of the defendant's defense," and, in the very next phrase, documents "intended for use by the government as evidence in chief at the trial."

*Armstrong*, 517 U.S. at 462, 116 S.Ct. 1480.

Akroush seeks these documents to bolster his motion to dismiss, which is the kind of "sword" that does not entitle him to the discovery he seeks.

### g. Item 20 – Jail Calls by Akroush

Akroush received some but not all recorded jails calls. The last recorded jail call received by the defense was made on November 8, 2015, but Defendant was in custody after November 8, 2015 and those calls have not been produced.

The Government has not opposed the motion. In response to a similar request by Defendant Habash, the Government opposed the request on the grounds that the Government is not possession, custody, or control of the jail calls, but through meet and confer efforts, agreed to produce Habash's jail calls.

**Ruling:** The Court GRANTS the request. While the Government contends, as to the other Defendant, that it is not possession custody or control of the jail calls, the Government has produced some of the jail calls as to both defendants. Accordingly, it seems the government has some control over obtaining the jail calls, and therefore, the jail calls should be produced.

**RECIPROCAL DISCOVERY**

The Government has requested reciprocal discovery. Rule 16(b) provides that if a defendant makes a request for discovery, and the Government complies, the Government is entitled to reciprocal disclosure by defendant. See Rule 16(a)(1)(E), 16(A)(1)(F) and 16(b).

**Ruling:** The Court GRANTS this request.

### III. CONCLUSION AND ORDER

For the reasons stated more fully above, the Court GRANTS the Motions in PART and DENIES the MOTIONS in PART. The production of the unredacted documents shall occur not later than March 23, 2018. All other productions should occur as soon as practicable, and not later than March 23, 2018.

IT IS SO ORDERED.

Dated: __**January 30, 2018**__          /s/ *Barbara A. McAuliffe*
                                     UNITED STATES MAGISTRATE JUDGE