UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HAITHAM EID HABASH,<br><br>Defendant. | No. 1:15-cr-00286-DAD-BAM<br><br>ORDER DENYING DEFENDANT HABASH'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 553) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Haitham Eid Habash. (Doc. No. 553.) That motion is based in part on the risks allegedly posed to defendant Habash by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On October 8, 2015, defendant Habash was charged with conspiracy to manufacture, to distribute, and to possess with intent to distribute Schedule 1 synthetic cannabinoids and aiding and abetting in violation of 21 U.S.C. § 841(a), § 841(b)(1)(C), and § 846 and 18 U.S.C. § 2. (Doc. No. 1.) On December 12, 2018, defendant entered a plea of guilty to the sole count of a Superseding Information charging him with that same offense. (Doc. Nos. 387, 391.) On April 15, 2019, the court sentenced defendant Habash to 63 months in the custody of the U.S. Bureau of

Prisons ("BOP"), to be followed by a 36-month term of supervised release. (Doc. Nos. 440, 441.) The court also ordered defendant to pay the mandatory special assessment in the amount of $100.00. (Doc. No. 441 at 6.)

Defendant is now serving his sentence at Federal Correctional Institution, Florence ("FCI Florence") in Florence, Colorado. (Doc. No. 553 at 6.) As of the date of this order, defendant Habash has served a little over 15 months of his 63-month prison sentence. (Doc. Nos. 570 at 1; 562 at 3.) According to the government, defendant's projected release date is December 16, 2023, based upon the application of good time credits. (Doc. No. 562 at 3.)

On August 31, 2020, defendant filed the pending motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 553.) The government filed its opposition to the pending motion on September 30, 2020, and on October 14, 2020, defendant filed his reply thereto. (Doc. Nos. 562, 570.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a

/////

/////

/////

2

> motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F.

/////
/////
/////
/////
/////
/////

---

*Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Supp. 3d 674, 681 (N.D. Cal. 2019).[4]

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United*

---

[4] In the pending motion, defendant Habash contends that this court should not limit its review of whether he has presented extraordinary and compelling circumstances justifying a reduction of his sentence under 18 U.S.C. § 3582(c) to the pre-FSA categories described in U.S.S.G. § 1B1.13. (*See* Doc. No. 553 at 13–15) (citing to the *Parker*, *Rodriguez*, and other cases from within and outside the Ninth Circuit); *see also* Doc. No. 570 at 3–4.) Defendant contends that this court has "broad discretion" to determine whether extraordinary and compelling reasons exist justifying the granting of the requested relief. (Doc. No. 570 at 3.) Defendant's argument is of no important because regardless of whether the court analyzes his motion under the criteria set out in U.S.S.G.§ 1B1.13 or under its "broad discretion," as discussed below, the court finds that the circumstances that defendant relies on—mainly his underlying health conditions (*see generally* Doc. No. 553)—are not extraordinary and compelling and therefore do not warrant his compassionate release at this time.

*States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

### A.    Administrative Exhaustion

Defendant Habash asserts, and the government does not dispute, that he has exhausted his administrative remedies prior to filing his pending § 3582 motion. (*See* Doc. Nos. 553 at 15; 562 at 4.)  Because a failure to exhaust administrative remedies is normally viewed as an affirmative defense, the court will accept the government's concession as to this point.  Below the court will turn to the merits of defendant's motion.

### B.    Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*.  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

/////

>The defendant is
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>
>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

Defendant Habash argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist "because of serious preexisting medical conditions"

---

[5] Here, however, because defendant Habash is only 57 years old (Doc. No. 553-3 at 4), his age and age-related factors do not play a role in consideration of his pending motion.

which he argues increase his risk of suffering serious illness if he contracts COVID-19. (Doc. No. 553 at 6.) Defendant concedes that the presentence report prepared in his case noted that he was in "good overall health," but he explains that before he surrendered himself to BOP custody, he underwent an emergency triple coronary artery bypass graft surgery on May 13, 2019. (*Id.* at 11.) He argues that after he began serving his sentence at FCI Florence, "an attending medical provider noted that Habash was prescribed two medicines after his May 2019 heart surgery that indicate a hypertension diagnosis, but likely were diagnosed for his heart condition." (*Id.* at 12.) Defendant also was kept under observation at a Colorado hospital for three days in October 2019 "due to a hypertensive episode." (*Id.*) After this latest stay in the hospital, defendant was diagnosed to be suffering with "hypertensive crisis, coronary artery disease, and restrictive lung disease due to a history of smoking." (*Id.*) Pointing to his BOP medical records, defendant notes that he "has a history of chronic ischemic heart disease, high blood pressure, hyperlipidemia, and obesity," and that he has a body mass index ("BMI") of 30.1. (*Id.* at 11–12.)

Defendant contends that his health conditions, especially his obesity, high blood pressure, coronary artery disease, and history of smoking place him at an increased risk of suffering severe illness from COVID-19 were he to contract the virus based on CDC guidance identifying those medical conditions as risk factors. (*Id.* at 12.) At bottom, defendant Habash argues that the "combined effect[s] of his well[-]documented health risks, and the likelihood that F[CI] Florence remains unprepared to prevent an outbreak" of COVID-19 establishes that extraordinary and compelling circumstances exist warranting his release. (*Id.* at 16.) Defendant, however, has provided no analysis, argument, or evidence in support of his speculative contention that FCI Florence is unable to prevent an outbreak of COVID-19 at that prison and the implicit suggestion that were an outbreak of the virus to occur there he could not be adequately cared for. Defendant Habash instead relies on news reports about a different BOP facility (the Federal Correctional Institution, Miami) and argues that FCI Florence "utilizes the same screening procedures used at FCI Miami" and that "a dangerous outbreak is eminent." (*Id.* at 17.)

In its opposition, the government concedes that defendant suffers from the various health conditions described above, and acknowledges that the U.S. Centers for Disease Control and

Prevention ("CDC") has advised that individuals with chronic ischemic heart disease are at an increased risk of severe illness from COVID-19 if they contract the virus and that individuals with general hypertension may be at an increased risk of severe illness from COVID-19. (Doc. No. 562 at 3, 8–9.) However, the government contends that hyperlipidemia "is not recognized as a risk factor by the CDC." (*Id.* at 8.) Moreover, the government argues that defendant has failed to carry his burden to establish his eligibility for compassionate release because (1) the general threat of COVID-19 is not enough to establish extraordinary and compelling reasons warranting a sentence reduction, (2) defendant Habash is not obese, because he has a BMI of 29.2; and (3) he has not shown that FCI Florence is unable to monitor and adequately treat his medical conditions. (*Id.* at 8–9.)

In his reply, defendant contends that the government has "fail[ed] to acknowledge" his May 2019 surgery and his three-day stay in October 2019 at a hospital in Colorado following his surrender into custody. (Doc. No. 570 at 2.) Moreover, he maintains that his BMI is 30.1 and that he therefore faces an increased risk of suffering a severe illness if he contracts COVID-19. (*Id.*)

As an initial matter, the court finds that defendant has a BMI of 29.2 because the medical records relied on by the government in making that assertion are more recent than the records relied on by defendant. (*Compare* Doc. No. 569 at 17 (medical records from August 2020), *with* Doc. No. 559 at 37 (medical records from February 2020)). According to the CDC, a person with a BMI of 29.2 might be at an increased risk of severe illness I they contract COVID-19. *See People at Increased Risk: People With Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated October 16, 2020). More importantly, it is undisputed that according to the CDC, "[a]dults of any age" who have certain medical conditions including "[h]eart conditions, such as heart failure [and] coronary artery disease" and smokers are "at increased risk of severe illness from the virus that causes COVID-19," and adults with hypertension "might be at an increased risk for severe illness from the virus that causes COVID-19." *See id.* Defendant has therefore shown that because he suffers from these medical

conditions, he is at an increased risk for suffering severe illness if he were to be infected with COVID-19.

Nevertheless, the court concludes that defendant Habash has not met his burden of establishing extraordinary and compelling reasons warranting his release because he has not shown, or even argued for that matter, that FCI Florence is unable to monitor and adequately treat his medical conditions. *See United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted). In fact, the extensive medical records filed by defendant in support of his motion suggest that FCI Florence is providing him adequate medical care because his conditions are being monitored and he is being cared for by BOP medical staff.  (*See* Doc. Nos. 558, 559.)  Moreover, defendant Habash has not shown, or even argued, that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 or that his ability to provide for his self-care at FCI Florence is in any way substantially diminished. *See United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020) ("[T]he presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing is an inability to provide self–care) (citation omitted). Rather, in his pending motion, defendant generally argues that the risk of contracting the virus is higher for incarcerated individuals, he highlights that 7 inmates have tested positive for COVID-19 at FCI Florence, and concludes that FCI Florence "has not taken adequate efforts to protect inmates, including [him] . . .." (Doc. No. 553 at 8, 17–18.)  Defendant Habash, however, does not provide any specific allegations regarding a lack of access to protective gear or cleaning and sanitizing supplies, or lack of ability to social distance at FCI Florence specifically.  In other words, defendant Habash has not come forward with any evidence regarding the conditions that *he* is currently encountering at FCI Florence, or the ways in which *he* is unable to provide self-care at FCI Florence as a result of those conditions.  Moreover, the court notes that as of October 27, 2020, the BOP was reporting only three cases among prisoners, two cases among staff, and

zero deaths at FCI Florence.  *See* https://www.bop.gov/coronavirus/ (last reviewed Oct. 27, 2020).[6]  Thus, it appears that the infection rate at defendant's prison is currently low.  Further, as noted above, it appears that the prison medical staff at FCI Florence have been able to adequately monitor defendant's various serious medical conditions and more than adequately care for him.  Thus, the court is not persuaded that extraordinary and compelling reasons exist warranting defendant's compassionate release based on his medical conditions and the conditions of his incarceration at FCI Florence.

Accordingly, the court concludes that defendant Habash has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A).  Therefore, his motion will be denied.

**C.      Consistency With the § 3553(a) Factors**

Finally, even if defendant Habash's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[7]  *See Parker*, 2020 WL 2572525, at *11.

Defendant Habash contends that the crime he pled guilty to was not a crime of violence and that while incarcerated, he "has completed numerous educational and self-improvement

---

[6] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results.  However, there is also no evidence before the court contradicting those reported numbers.

[7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

11

classes, and was scheduled to begin" the BOP's drug abuse program (RDAP) "before the pandemic hit." (Doc. No. 553 at 19.) The government counters by arguing that defendant is a continuing danger, and emphasizing that: (1) he was involved in "manufacturing and distributing a large quantity of synthetic cannabinoids containing dangerous controlled substances," (2) he was found in the possession of a firearm at the time of his arrest, despite being a convicted felon, and (3) "[h]is criminal history consists not only of his felony conviction for robbery but arrests for possessing a controlled substance, receipt of stolen property, robbery, attempted murder, and assault with a deadly weapon." (Doc. No. 562 at 9–11.)

As noted above, on April 15, 2019, the court sentenced defendant Habash to 63 months in the custody of the BOP following his entry of a guilty plea to conspiracy to manufacture, to distribute, and to possess with intent to distribute Schedule 1 synthetic cannabinoids and aiding and abetting. (Doc. Nos. 387, 440, 441.) Defendant's criminal offense was a serious one: the drugs that defendant helped manufacture and distribute contained controlled substances that were particularly dangerous, the ingestion of which could result in the user's death or serious illness in some cases. (Doc. No. 562 at 2.) With his acceptance of responsibility acknowledged, the presentence report in his case determined that defendant's total offense level was 31, that his criminal history category was I, and his advisory sentencing guideline range therefore called for a term of imprisonment of between 108 and 135 months. (Doc. No. 432 at 4, 8.) The presentence report recommended a sentence at the middle of the advisory guideline range, a 121–month term of imprisonment (*Id.* at 4.) After considering the § 3553(a) factors, the undersigned varied significantly downward from the advisory sentencing guideline range, and sentenced defendant to a 63-month term of imprisonment to be followed by a 36-month term of supervised release. (Doc. Nos. 440, 441.) In short, defendant Habash received a relatively lenient sentence given the seriousness of his criminal offense.

"The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL

2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Habash has served only approximately 15 months of his 63-month term of imprisonment, or 23.8% of the sentence imposed. (Doc. No. 570 at 1.) Indeed, the 63-month sentence imposed in this case was already well below the low end of the advisory sentencing guideline range. Granting defendant Habash's compassionate release motion would reduce his sentence to a 15-month term, which would be a dramatic and unjustified downward variance from the advisory sentencing guidelines range of this defendant.

Accordingly, the court concludes that the granting of the pending motion for compassionate release would not promote respect for the law, provide just punishment, or afford adequate deterrence.[8] *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

---

[8] In the pending motion, defendant Habash also appears to request that the court to release him on home confinement. (*See, e.g.*, Doc. No. 553 at 6.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5 n.6, *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e. approximately 15 months) and modify the conditions of supervised release to require home confinement for approximately 48 months. The court is unwilling to do so for the reasons set forth above. If the BOP determines that the defendant should be released to home confinement to serve his sentence under the Attorney General's expanded authority in that regard (*see* fn. 2 above) the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards, defendant's sentence should be reduced.

13

**CONCLUSION**

Because defendant Habash has failed to demonstrate that extraordinary and compelling reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 553) is denied.

IT IS SO ORDERED.

Dated: __October 29, 2020__              /s/ Dale A. Drozd
                                          UNITED STATES DISTRICT JUDGE